Elsie LAKE, Plaintiff and Respondent,

v.

Carlton NEUBAUER, Defendant and
Appellant.

No. 7712.

· Supreme Court of North Dakota.

Feb. 13, 1958.

Quentin N. Burdick, Fargo, for appellant.

Strutz, Jansonius & Fleck, Bismarck, for respondent.

GRIMSON, Chief Justice.

This is a suit for damages resulting from injuries caused by an automobile collision. The plaintiff claims that the collision was due to the negligence of the defendant and asks for $50,000 general damages. The defendant admitting the accident, claimed at first that the negligence of the plaintiff was the cause of, or at least contributed to, such accident and set up a counterclaim for damages he claims to have suffered. Before trial, however, defendant withdrew his counterclaim and filed an admission that his negligence was the cause of the collision and of plaintiff's resulting injuries, but denied that the injuries were as extensive as claimed by the plaintiff. The liability of the defendant having been admitted the only matter for trial was the amount of plaintiff's damages. The jury returned a verdict for the plaintiff and against the defendant for $9,000.

Promptly thereafter the defendant made a motion for a new trial and specified as error that the evidence relating to plaintiff's previous occupation as a nurse was admitted over objection and that the court erred in refusing to strike out such testimony. Defendant also assigned as error the refusal of the court to give to the jury an instruction proposed by the defendant. He further specified the insufficiency of the evidence to support the verdict. He claims the verdict was based on passion and prejudice. The court denied the motion and judgment for plaintiff was entered. This is an appeal from the order denying the motion and from the judgment. The same errors are again alleged on the appeal and in addition that the court erred in denying the motion for a new trial.

The defendant sets up four specifications of error relating to the admission of the evidence of plaintiff's prior occupation as a nurse. All questions in regard thereto were properly objected to. The objections were overruled. He also moved to strike that evidence. That motion was denied.

The argument made on the questions so raised was that the evidence of plaintiff's nursing four years before the accident was too remote and immaterial. The burden was on the plaintiff to show her good health at the time of the accident. In addition to her being able to carry on nursing, she testified to her same healthy condition down to the time of the accident. The admission of that testimony was a matter resting largely in the discretion of the trial court. Kemmer v. Sunshine Mutual Insurance Co., 79 N.D. 518, 57 N.W. 2d 856; In Kugling v. Williamson, 231 Minn. 135, 42 N.W.2d 534, 539, it is said: "Whether evidence should be excluded for remoteness rests largely in the discretion of the trial court." See also Long v. Leonard, 113 Vt. 258, 32 A.2d 679; 20 Am.Jur. Evidence, Sec. 259, p. 243, Sec. 306, p. 284. The question here was plaintiff's condition before the collision. The weight of the evidence objected to was for the jury. The admission thereof was not an error.

The defendant claims as error the refusal of the court to instruct the jury that, "You are not to consider the loss of nursing income which may occur in arriving at the damages in this case." This instruction must be considered in the light of the pleadings, the course of trial and instructions of the court. American Fidelity & Casualty Co. v. Farmer, 77 Ga.App. 187, 48 S.E.2d 137. The loss of nursing income by plaintiff did not become an issue in the case. The jury was properly instructed as to the issues in the case relating to damages, and while there is evidence that plaintiff had been a nurse, it is apparent from the record, as is hereinafter pointed out, that the jury confined its award to the items of damages upon which it was instructed by the court. The refusal to give the requested instruction was therefore not prejudicial error.

Defendant's further argument is that the evidence is not sufficient to support the verdict and that the court erred in denying the motion for a new trial. In support of that claim he alleges that the evidence shows plaintiff was not seriously injured; that she was a housewife with no income; that there was no sufficient evidence to show that sum of money would be a reasonable compensaton for her injuries.

The evidence shows that at the time of the accident plaintiff was a healthy woman, 44 years of age, with a life expectancy of 26.01 years; that she kept house for her husband and daughter and did all of the housework, including washing, cleaning and cooking. As to what happened in and after the accident, which was a head-on collision, she testified: "I got a blow on the forehead and get severe headaches, pains in the top of my head, shooting pains in the back of my neck, and it burns and aches and gets stiff and sore, * * * and as I walk my knees get stiffer, * * * I was sore all over, my body was black and blue * * * I haven't been the same since. I cannot do my work." She testified she had difficulty in walking, climbing stairs and could do no lifting. She was in bed three weeks and after she got up she says she just "puttered" around while her daughter did the work. She said she still suffered great pains at the time of the trial almost two years after the accident.

Dr. Nelson, who took care of her immediately after the accident, found her injuries severe, definitely painful and likely to continue in the future. Dr. Hart, the orthopedic surgeon who later treated her, testified that there had been some injury to the neck vertebra; that the muscles in the back of her neck were injured so as to limit motion in her neck about 25 percent; that the X-rays revealed a slip forward of the 6th. vertebra on the 7th. vertebra, and a small fracture in the back portion of the 7th. vertebra. He said that would produce bad headaches and pains in her head and neck and some pressure and irritation on the nerves. He testified that this condition would be permanent unless a very serious and dangerous

operation were performed. He said her knees were also injured.

The defendant depended entirely on the cross-examination of plaintiff and her witnesses. He offered no testimony. Thus there is plaintiff's undisputed evidence of severe injury, suffering and distress of body and mind, and of future and permanent injury which, to a reasonable certainty she will sustain in the future, proximately caused by the defendant's negligence or fault.

Section 32-0301 NDRC 1943, provides:

"Every person who suffers detriment from an unlawful act or omission of another may recover from the person in fault compensation therefor in money, which is called damages."

Defendant admits that it was his negligent act that caused plaintiff's injuries. It, therefore, follows that the only duty of the jury is to find plaintiff's damages for those injuries.

Section 32-0320 NDRC 1943, provides for the breach of an obligation not arising from contract. The measure of damages except when otherwise expressly provided by law, is the amount which would compensate for all detriment caused thereby, whether it could have been anticipated or not.

The court in its instructions summarized plaintiff's claims to the jury as follows:

"That as a result of this collision she suffered severe personal injuries; that she suffered severe head injuries, severe injuries to her back and spine and that she was bruised about her body. She was disabled for a long period of time and she was unable to carry on her duties as a housewife. Plaintiff further alleges that her health has been severely impaired; that she is nervous, unable to sleep and that she suffers from severe and excruciating headaches and that she has been informed, and on such information alleges, that such condition of nervousness, impaired health and spells of dizziness will continue for many months in the future and that she has suffered permanent injuries on account thereof."

Thus it is clear that the items for which the jury was instructed to find damages for the plaintiff, were her physical injuries, her pain and suffering therefrom, and her inability to carry on her duties as a housekeeper.

Defendant objects to the consideration by the jury of the last item because plaintiff was married and keeping house without any income. She is, however, still entitled to damages for the loss of her housekeeping ability.

In American Fidelity & Casualty Co. v. Farmer, 77 Ga.App. 192, 48 S.E.2d 137, 140, the court said: "The fact that the plaintiff was a housewife and attended merely to the duties around the house did not deprive her of the right to recover for loss of ability to work." See also Davis v. Renton, 113 Cal.App. 561, 298 P. 834.

On damages the court instructed the jury: "In this case defendant has admitted the fault and, therefore, the plaintiff is entitled to recover compensation as far as it is susceptible of an estimate in money for fair compensation and reasonable sum for pain and suffering and distress of body and mind and for future and permanent bodily injury which, to a reasonable certainty, she would sustain in the future proximately caused by the defendant's negligence or fault."

■ The determination of damages for pain and suffering is not susceptible of arithmetical calculation. Its ascertainment must to a large degree depend upon the common knowledge, the good sense and practical judgment of the jury. They heard the testimony of the plaintiff and saw her on the witness stand. They had the opportunity to observe her appearance and actions at that time, which could be con-

sidered by the jury in arriving at a just conclusion. To aid the jury in that duty the court instructed them:

"In weighing the evidence in this case you should bring to your assistance your own good judgment and common sense acquired from your observations and experience in life."

From the evidence and according to the law submitted by the court the jury must find the compensation to which the plaintiff is entitled. That evidence shows that the plaintiff was severely injured; that she would necessarily suffer pain from the physical injuries such as displacement of the vertebra affecting her head and nervous condition; that she had lost her housekeeping ability.

In Peacock v. J. L. Brandeis & Sons, 157 Neb. 514, 60 N.W.2d 643, 645, it is held that:

"The question of the amount of damage is one solely for the jury and its action in this respect will not be disturbed on appeal if it is supported by evidence and bears a reasonable relationship to the elements of injury and damage proved." See also Bresley v. O'Conner, Inc., 163 Neb. 565, 80 N.W.2d 711, 720; Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N.W.2d 627; Erickson v. Morrison, 152 Neb. 133, 40 N.W.2d 413; Benedict v. Eppley Hotel Co., 161 Neb. 280, 73 N.W.2d 228.

When we consider the verdict in the light of the evidence we are satisfied that the jury followed the instructions of the court and considered only those matters that the court outlined for their consideration. There is no evidence of passion or prejudice. The plaintiff's life expectancy was 26.01 years. The verdict of $9,000 is the present value at 5 percent interest of less than $50 per month for the period of the plaintiff's life expectancy. Even if we were to assume that the jury awarded the plaintiff nothing for her injuries, pain and suffering which were substantial, $50 a month still would not be excessive for the loss of her capacity as a housekeeper.

On the matter of a new trial, Section 28-1902 NDRC 1943, Par. 5, provides that when a new trial is asked for on the grounds of excessive damages appearing to have been given under the influence of passion and prejudice, the trial court, hearing the motion, and the Supreme Court, on appeal, shall have power to order a new trial. This court in interpreting this section in Emery v. Midwest Motor Express, 79 N.D. 27, 54 N.W.2d 817, 823, said:

"Where a motion for a new trial is made on the ground of excessive damages appearing to have been given under the influence of passion or prejudice the duty is placed upon the trial court to whom the motion is addressed to consider and weigh the evidence. 'This necessarily involves an exercise by the trial judge of the superior knowledge possessed by him as to matters incident to the trial itself.' A motion for a new trial based on such ground is addressed to the sound judicial discretion of the trial court and its ruling will be disturbed only when an abuse of discretion is clearly shown." Reid v. Ehr, 36 N.D. 552, 162 N.W. 903, 905; Green v. Soule, 145 Cal. 96, 78 P. 337. See also Booren v. McWilliams, 34 N.D. 74, 87, 157 N.W. 698; Moe v. Kettwig, N.D., 68 N.W.2d 853; Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240; Johnson v. Patterson, 67 N.D. 132, 270 N.W. 97, and cases cited.

On the motion for a new trial in the instant case, the trial court reviewed the evidence carefully in his memorandum decision and, with the advantage of having seen and heard the witnesses and conduct of the trial, came to the conclusion that there was sufficient evidence for the jury

to find the verdict it rendered. He then determined that in view of all the circumstances of the case the verdict was not excessive.

We also have reviewed all of the evidence carefully and considering the showing of plaintiff's permanent injuries, pain and suffering, and loss of housekeeping ability, we find that the district court did not abuse its discretion in denying the motion for a new trial.

The order and judgment of the District Court are affirmed.

MORRIS, SATHRE, JOHNSON and BURKE, JJ., concur.